UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 11, 2015

-------------------------------------------------------------------- X
                                                                     :
TOWN OF MAMAKATING, NEW YORK, and                                    :
THE VILLAGE OF BLOOMINGBURG, NEW                                      :
YORK,                                                                 :
                                                                     :
                                    Plaintiffs,                       :          15-cv-2865 (KBF)
                                                                     :
                    -v-                                               :          OPINION & ORDER
                                                                     :
SHALOM LAMM et al.,                                                  :
                                                                     :
                                    Defendants.                       :
                                                                     :
-------------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

This suit is one of several filed in this Court arising out of a clash over the

future development of the Town of Mamakating (the "Town") and the Village of

Bloomingburg (the "Village"), two political subdivisions of the State of New York

located in the eastern portion of Sullivan County.[1]  In this iteration of the dispute,

the Town and Village assert seventeen causes of action against various individuals

and their commercial entities alleging that defendants have engaged in fraud,

bribery, intimidation, voter fraud and corrupt influence of public officials and

government institutions in order to take control of local institutions and erect a high

density residential development project known as Chestnut Ridge.  (Am. Compl.,

ECF No. 36.)  Plaintiffs' claims arise under the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), and under New York law.

--------

[1] The Court assumes familiarity with the related actions pending in this Court.  See Sullivan Farms II, Inc. v. Vill. of Bloomingburg, New York, 14-cv-7250 (KBF) (S.D.N.Y.); Smilowitz v. Sullivan Cnty. Bd. of Elections, 15-cv-1757 (KBF) (S.D.N.Y.); Roe v. Town of Mamakating, 15-cv-6682 (KBF) (S.D.N.Y.).

Pending before the Court are two motions dismiss—one from defendant
Duane Roe and the other from defendants Shalom Lamm, Kenneth Nakdimen,
Sullivan Farms II, Inc., Raymond Farms, LLC, and Bloomingburg Rentals, LLC.
(ECF Nos. 39, 43.)  The motions have been extensively briefed and are based on
numerous grounds.  The Court, however, dismisses this action primarily on the
basis that plaintiffs' RICO claims are time-barred, and alternatively, on the grounds
that plaintiffs have failed to plead a RICO enterprise or an injury cognizable under
RICO.  Because plaintiffs have not requested leave to file a Second Amended
Complaint, and any amendment would nevertheless be futile, the Court dismisses
plaintiffs' RICO claims with prejudice and declines to exercise supplemental
jurisdiction over the remaining state law claims.

I.    FACTUAL BACKGROUND[2]

    A.    <u>The Parties</u>

The Town of Mamakating is a rural community of approximately 12,000 full
time residents that is governed by a Town Board and a Supervisor, who serves as
the Town's Executive.  (Am. Compl. ¶ 47.)  The Village of Bloomingburg, which has
slightly more than 400 residents, is located within the confines of the Town and is
governed by a Mayor and two Trustees.  (Am. Compl. ¶ 48.)  During the events
underlying this dispute, the Town ceded jurisdiction and zoning powers over the
territory upon which Chestnut Ridge sits to the Village.  (Am. Compl. ¶¶ 47-48.)

---

[2] In deciding the pending motions, the Court accepts as true all of plaintiffs' allegations, and draws
all reasonable inferences in their favor.  <u>See Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell
Atl. Corp. v. Twombly</u>, 550 U.S. at 555-57); <u>N.J. Carpenters Health Fund v. Royal Bank of Scotland
Grp., PLC</u>, 709 F.3d 109, 121 (2d Cir. 2013).

Defendants Shalom Lamm and Kenneth Nakdimen are purported residents of the Village who own defendants Sullivan Farms II, Inc. ("Sullivan Farms"), and Raymond Farms, LLC ("Raymond Farms"), a New York corporation and New York limited liability company, respectively.  (Am. Compl. ¶¶ 49-50, 53-54.)  Lamm and Nakdimen are partners in and exercise dominion and control over the development of Chestnut Ridge.  (Am. Compl. ¶¶ 49-50.)  Lamm also owns defendant Bloomingburg Rentals, LLC, a Delaware limited liability company that owns many of the various buildings in which allegedly sham voters solicited by defendants in furtherance of the racketeering scheme claimed to reside.  (Am. Compl. ¶ 55.)

Defendant Duane Roe is a real estate developer, multi-generational resident of the Town, former Town Supervisor, former head of the Mamakating Republican Committee, and former husband of the Town Judge.  (Am. Compl. ¶ 51.)  He was "the original 'paper' owner" of Sullivan Farms and allegedly acted as Lamm's and Nakmiden's "confidential front man and shill" to further the alleged enterprise's goals.  (Id.)  Defendant Mark Berentsen is the former Mayor of the Village allegedly corruptly influenced by Lamm.  (Am. Compl. ¶ 52.)

B.    The Alleged Scheme

The Amended Complaint alleges that defendants, led by Lamm and Nakmiden, collectively formed an association-in-fact enterprise for the purpose of fraudulently inducing the Village to annex and re-zone the land on which Chestnut Ridge sits, obtaining favorable environmental impact reviews and governmental approvals for Chestnut Ridge, and gaining a monopoly on waste-water treatment

capacity in the area.[3]  (Am. Compl. ¶¶ 56-57.)  The enterprise engaged in a "long

term five phase plan" to covertly seize control of the public institutions of both the

Town and Village and erect a 396 unit high density housing project at Chestnut

Ridge that would transform the character of the community.  (E.g., Am. Compl. ¶¶

22-35.)  While the Amended Complaint thoroughly and exhaustively details the

various aspects of defendants' scheme, the Court here summarizes the allegations

only to the extent necessary to explain its reasoning for granting the pending

motions.[4]

In phase one, Lamm and Nakmiden enlisted Roe, who had deep ties to the

local community, to act as a "shill" and "front man" to discretely acquire certain

parcels of real property in the Town adjacent to the Village (i.e. the property that

would become Chestnut Ridge) and obtain approvals to consolidate those properties

into a single large parcel.  (Am. Compl. ¶¶ 63-68, 73-74.)  On May 3, 2006, Roe

entered into a "Confidential Retention Agreement" with Lamm and Nakmiden in

which he agreed to convey Sullivan Farms, a corporation that Roe owned which by

then had acquired the designated properties, to Raymond Farms by March 14, 2007.

(Am. Compl. ¶¶ 69-70, 85.)  Section 3.4 of the agreement obligated Roe to obtain

approvals from the Village for a residential housing project at Chestnut Ridge

consisting of at least 400 units of townhouses.  (Am. Compl. ¶ 80.)

---

[3] The Court refers to its prior opinion in Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg,
N.Y., for additional background on the Chestnut Ridge project.  See No. 14-cv-7250 (KBF), 2015 WL
3604300 (S.D.N.Y. June 9, 2015).

[4] Many of the allegations in the Amended Complaint provide the atmospherics surrounding
defendants' conduct and the details of how defendants executed their plan.  Because such facts are
not material to the Court's resolution of the pending motions, the Court does not recite such
allegations here.

Phase two involved Roe's misrepresentation of the scope of the development plan to the Town, Village and local citizenry to ensure that the project would obtain approval.  (Am. Compl. ¶ 28.)  On May 4, 2006, the day after signing the Confidential Retention Agreement, Roe appeared at a public meeting before the Village Board and falsely represented that Chestnut Ridge would consist of a 125 unit luxury townhouse second home community with a golf course and swimming complex, instead of the 400 unit housing project that defendants intended to build. (Am. Compl. ¶ 93.)  Among other misrepresentations intended to secure the project's approval, Roe stated that he would upgrade the Village's waste water treatment plant and did not disclose defendants' intention to nearly quadruple the size of the plant and reserve excess capacity exclusively for Chestnut Ridge.  (Am. Compl. ¶ 98.)  On November 2, 2006, in reliance on Roe's misrepresentations, the Village and Town each adopted an annexation resolution and order for the purposes of transferring zoning powers and jurisdiction over Chestnut Ridge from the Town to the Village.  (Am. Compl. ¶¶ 120-21.)

In phase three, defendants bribed and corrupted key public officials of the Village, including defendant Mayor Mark Berentsen (who was elected in April 2008) and his wife Susan Berentsen, the Village Clerk, to secure approval of a revised proposal expanding the size of Chestnut Ridge.  (Am. Compl. ¶¶ 136-44, 174-83.) The Amended Complaint alleges that in exchange for bribes, in September 2008 Berentsen secured the Village's rezoning of 200 acres to alter the mandatory two-acre zoning of the territory where Chestnut Ridge would be developed.  (Am. Compl.

¶ 159.)  At various points, Berentsen also helped ensure that Chestnut Ridge would pass environmental impact reviews without adequate opportunity for the public to comment in opposition to the plan.  (E.g., Am. Compl. ¶¶ 143-49, 166-70, 196-207.)

Then, in January 2009, Roe filed a subdivision and site plan with the Village Planning Board that called for the creation of 396 high density residential units and infrastructure, revising the 125 unit plan he had proposed in 2006 (Am. Compl. ¶ 164), and by March 2010, Berentsen confirmed that Chestnut Ridge would not include a golf course as had been originally promised (Am. Compl. ¶ 221).  On May 6, 2010, Berentsen and Nakmiden, on behalf of the Village and Sullivan Farms,[5] respectively, entered into a "Development Agreement" regarding Chestnut Ridge that explicitly stated that the project would include 396 residential townhouses. (Am. Compl. ¶¶ 223-27; see Development Agreement § 2.1, Am. Compl. Ex. B.)  The Village Planning Board granted conditional final approval to the Chestnut Ridge site plan and subdivision in June 2010.  (Am. Compl. ¶ 234.)  Plaintiffs allege that it was not until the Village Board meeting on August 9, 2012, at which Lamm gave a presentation about Chestnut Ridge, that it became clear that the public had been deceived by Roe and Lamm about the true size and character of the development project.  (Am. Compl. ¶¶ 257-66.)

In phase four, defendants allegedly sought to take direct control of the local governmental apparatus by engaging in widespread voter fraud in Village elections, starting with the election for Village Mayor and two trustee seats held on March 18,

---

[5] By this time, ownership of Sullivan Farms had been transferred from Roe to Raymond Farms. (Am. Compl. ¶ 224.)

2014.  (Am. Compl. ¶¶ 298-301.)  Lamm, Nakdimen and others allegedly recruited large numbers of individuals from Brooklyn, New Jersey and elsewhere who had never resided in or been seen in the Village to knowingly file false voter registrations with the Sullivan County Board of Elections to cast fraudulent votes in Village elections.  (Am. Compl. ¶ 303.)  Among other tactics, Lamm also directed an individual, Chaim Rosenbaum, to challenge the registrations of targeted Village registrants to prevent them from running against Lamm's favored candidates.  (Am. Compl. ¶ 310.)  New York State court litigation ensued and, following the March 2014 election, many successful challenges were made to the registrations of sham voters that had been recruited by Lamm.  (Am. Compl. ¶¶ 316-400.)  Berentsen, Lamm's preferred candidate for Village Mayor, lost his bid for re-election.  (Am. Compl. ¶ 399.)  The Amended Complaint also alleges further instances of voter fraud with respect to the September 30, 2014 special election regarding the proposed dissolution of the Village, and the March 18, 2015 election for one Village trustee seat.  (See Am. Compl. ¶¶ 401-55, 462-68.)

The fifth and final phase of defendants' alleged scheme consists of targeting opponents by filing allegedly baseless lawsuits (including the related actions pending in this Court) and falsely charging opponents with anti-Semitism to terrorize and silence them.  (Am. Compl. ¶¶ 456-61.)

## II.   PROCEDURAL HISTORY

Plaintiffs commenced this action on April 14, 2015 (ECF No. 1), and filed the Amended Complaint on July 7, 2015 (ECF No. 33) following defendants' first motion to dismiss (ECF No. 24).  The Amended Complaint asserts seventeen largely

duplicative causes of action for substantive violations of the civil RICO statute and related conspiracies, as well as state law claims for, inter alia, common law fraud and breach of fiduciary duty.  (Am. Compl. ¶¶ 475-564.)  The alleged predicate acts underlying the RICO claims include mail fraud, 18 U.S.C. § 1341, wire fraud 18 U.S.C. § 1343, bribery, N.Y.P.L. §§ 200.00 et seq., theft of the intangible right of honest services, 18 U.S.C. § 1346, and travel in interstate commerce in furtherance of a racketeering enterprise, 18 U.S.C. § 1952(a)(3).  (E.g., Am. Compl. ¶ 480(a)-(m).)  Plaintiffs seek compensatory and treble damages, costs, and attorneys' fees, rescission of the Development Agreement, injunctive relief to prevent further development of Chestnut Ridge in violation of local law, and appointment of a monitor to oversee local elections and other aspects of Town and Village governance.  (Am. Compl. ¶¶ 475-564.)

Defendants filed the instant motions to dismiss on July 21, 2015 and July 24, 2015, respectively.  (ECF Nos. 39, 43.)  Plaintiffs submitted their opposition on August 17, 2015.  (ECF No. 47.)  Defendants submitted replies on August 26, 2015.  (ECF Nos. 54, 55.)  On August 27, 2015, the Court issued an order informing the parties of its intention to grant the instant motions and staying all discovery in this action.  (ECF No. 56.)

III.   LEGAL STANDARDS

A.   Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund,

Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555).  In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570); see also Iqbal, 556 U.S. at 678 (same).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

The Court must accept as true—for purposes of this motion only—the facts as alleged in the pleadings, and the Court must draw all inferences in plaintiffs' favor.  See id. at 678 (citing Twombly, 550 U.S. at 555-57).  Thus, if a fact is susceptible to two or more competing inferences, in evaluating these motions, the Court must, as a matter of law, draw the inference that favors the plaintiff so long as it is reasonable.  N.J. Carpenters, 709 F.3d at 121.  "[T]he existence of other, competing inferences does not prevent the plaintiff[s'] desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an obvious alternative explanation."  Id. (quotation marks omitted).

The Court does not, however, credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  Id.  If the court can infer no more than "the mere possibility of misconduct" from the factual averments—in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate.  Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).

Where necessary, the Court may supplement the allegations in the complaint with facts from documents either referenced therein or relied upon in framing the complaint.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

B.    Statute of Limitations

Though the lapse of the statute of limitations period is an affirmative defense, a defendant may raise it in a pre-answer motion to dismiss pursuant to Rule 12(b)(6) if "the defense appears on the face of the complaint."  Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (citing McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)).  RICO claims are subject to a four-year statute of limitations.  Koch v. Christie's Int'l PLC, 699 F.3d 141, 148 (2d Cir. 2012).  "In a RICO case, the first step in the statute of limitations analysis is to determine when the plaintiff sustained the alleged injury for which the plaintiff seeks redress."  Id. at 150.  "The Court then determines when the plaintiff discovered or should have discovered the injury and begins the four-year statute of limitations period at that point."  Id. (quotation marks, alterations and citation omitted).  Under the discovery accrual rule, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."  Rotella v. Wood, 528 U.S. 549, 555 (2000).  Thus, the RICO statute of limitations "runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry."  World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 328 F. App'x 695, 697 (2d Cir. 2009) (summary order) (citing Staehr, 547 F.3d at 427); see also Koch, 699 F.3d at 151.

In addition to determining when the injury occurred, the Court must also determine the first date on which the plaintiff was on inquiry notice. "[C]ourts can 'readily resolve the issue' of inquiry notice as a matter of law on a motion to dismiss—as has been done in 'a vast number of cases' in this circuit—where 'the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers . . . integral to the complaint.'" Staehr, 547 F.3d at 412 (quoting Lentell v. Merrill Lynch & Co., 396 F.3d 161, 168 (2d Cir. 2005)); see also Takeuchi v. Sakhai, 227 F. App'x 106, 107 (2d Cir. 2007) (summary order) (stating that inquiry notice is triggered by notice of fraud rather than notice of actual injury). Inquiry notice may be found "only when uncontroverted evidence clearly demonstrates when the plaintiff should have discovered the fraudulent conduct." Staehr, 547 F.3d at 427. "'Storm warnings' need not detail every aspect of the alleged fraudulent scheme." Id. Rather, a "totality-of-the-circumstances analysis applies." Id.

Inquiry notice "gives rise to a duty of inquiry." Koch, 699 F.3d at 151 (quoting Lentell, 396 F.3d at 168). When this duty arises, imputation of knowledge will be timed in one of two ways for statute of limitation purposes: (1) "if [a RICO plaintiff] makes no inquiry once the duty arises, knowledge will be imputed as of the date the duty arose;" and (2) "[w]here a RICO plaintiff does begin or has begun to inquire once the duty arises, the Court must determine when a reasonably

11

diligent investigation would have revealed the injury to a person of reasonable intelligence." Id. at 151, 153 (citation and alterations omitted).

      C.     RICO Enterprise

     "RICO makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .'" Boyle v. United States, 556 U.S. 938, 943-44 (2009) (quoting 18 U.S.C. § 1962(c)) (emphasis in original). An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This concept "has a wide reach"; accordingly it is to be "liberally construed to effectuate [RICO's] remedial purposes," and is not exhaustive but instead "might include, in addition to the specifically enumerated entities, others that fall within the ordinary meaning of the term 'enterprise.'" Boyle, 556 U.S. at 944 & n.2.

     An association-in-fact enterprise for RICO purposes "'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" Id. at 945 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). It must have "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. at 946. In other words, it is "'a group of persons associated together for a common purpose of engaging in a course of conduct.'" Id. (quoting Turkette, 452 U.S. at 583); see also

id. at 948 ("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose.").  Furthermore, its associates must not operate entirely "independently and without coordination"—instead, the enterprise must have some existence beyond the commission of the individual racketeering violations alone.  Id. at 947 n.4.

      D.    RICO Injury

"The RICO civil liability provision confers standing on '[a]ny person injured in his business or property by reason of a violation of section 1962.'"  Hecht v. Commercial Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990) (quoting 18 U.S.C. § 1964(c)).  "[T]he injury must be caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts."  Id.; see also Baisch v. Gallina, 346 F.3d 366, 373 (2d Cir. 2003).  "[T]he RICO pattern or acts proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence."  Hecht, 897 F.2d at 23-24; see also Baisch, 346 F.3d at 374.

"[A]s a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite."  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768 (2d Cir. 1994).  A plaintiff may not premise a RICO injury on "generalized reputational harms," Kimm v. Chang Hoon Lee & Champ, Inc., 196 F. App'x 14, 16 (2d Cir. 2006) (summary order), or on an injury to an intangible right, Makowski v. United Bhd. Of Carpenters & Joiners of Am., No. 08 Civ. 6150(PAC), 2010 WL 3026510, at *13 (S.D.N.Y. Aug. 2, 2010); see also Town of W. Hartford v. Operation Rescue, 915 F.2d 92, 104 (2d Cir. 1990) (Injury to a

government entity's "ability to carry out its functions" does not constitute a RICO injury.); Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000) ("'[A] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest.'" (quoting Steele v. Hosp. Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994))).

IV.   DISCUSSION

   A.   Statute of Limitations

   Plaintiffs' RICO claims are clearly time-barred.  The Amended Complaint (and the documents attached to it) show that to the extent plaintiffs allege an injury cognizable under the civil RICO statute, they had actual or inquiry notice of that injury well more than four years before they initiated this action.  Plaintiffs allege they first suffered a RICO injury in 2006 when they were defrauded by Roe's misrepresentations relating to the size and character of Chestnut Ridge.  (Am. Compl. ¶¶ 20, 93.)  The Amended Complaint alleges that on May 4, 2006, Roe appeared at a Village Board meeting and "tout[ed] his false proposal to build a 125 unit luxury townhouse second home community with a golf course and swimming complex which would be available to the general public."  (Am. Compl. ¶ 93.) Plaintiffs' injury arising from that misrepresentation occurred by November 2, 2006 at the latest because by that date the Village and Town had each adopted an annexation resolution and order for the purposes of transferring zoning powers and jurisdiction over Chestnut Ridge to the Village.  (Am. Compl. ¶¶ 120-21.)

   On the face of the Amended Complaint, plaintiffs knew or should have known of their alleged injury by January 2009, when Roe filed a subdivision and site plan

with the Village Planning Board that called for the creation of 396 high density residential units.  (Am. Compl. ¶ 164.)  Even if that act was insufficient, plaintiffs certainly knew or should have known of their injury by May 2010, when the Village entered into a Development Agreement with Sullivan Farms that explicitly stated that Chestnut Ridge would include 396 residential townhouses and made no mention of a golf course, or by June 2010, when the Village Planning Board granted conditional final approval to the site plan and subdivision.  (See Development Agreement § 2.1, Am. Compl. Ex. B; Am. Compl. ¶ 234.)  These acts taken by the Village government were sufficient to put the Village on actual notice of its RICO injury.

Even if documents submitted to and acts taken by the Village did not put the Town on actual notice, the Town may properly be charged with inquiry notice of publicly accessible documents.  Menowitz v. Brown, 991 F.2d 36, 42 (2d Cir. 1993); see also Salinger v. Projectavision, Inc., 934 F. Supp. 1402, 1410 n.5 (S.D.N.Y. 1996).  It is not dispositive that by mid-2010 plaintiffs did not know every aspect of the alleged fraud.  Staehr, 547 F.3d at 427; see also Thompson v. Metro. Life Ins. Co., 149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001) ("[I]t is not necessary for a plaintiff to understand every permutation of his or her injury, rather the plaintiff simply needs to have a 'hint' or 'suspicion' of the injury and its cause to be put on inquiry notice.").  The information that could be imputed to the Village and that should have been known to the Town was sufficient to put plaintiffs on notice such that a

reasonably diligent investigation would have revealed the injury to a person of reasonable intelligence.  Koch, 699 F.3d at 153.

Plaintiffs assert several theories for why this action is timely, but none are persuasive.  Plaintiffs first argue that the limitations period will not begin to run until defendants build the 126th unit of Chestnut Ridge because the fraudulent scheme will remain inchoate until that time.  But, to the extent that plaintiffs argue that no actual RICO injury has yet occurred, their RICO claims would be subject to dismissal as unripe for adjudication.  See Motorola Credit Corp. v. Uzan, 322 F.3d 130, 135 (2d Cir. 2003) (citing First Nationwide Bank, 27 F.3d at 767).  Moreover, plaintiffs' argument conflicts with numerous allegations in the Amended Complaint explaining how the Village and the Town have already suffered injury due to defendants' fraudulent scheme.  (See, e.g., Am. Compl. ¶¶ 482(a)-(j).)

Plaintiffs next argue that "even if the initial harm was complete by 2010 when the initial Development Agreement was inked," the limitations period started anew with each new fraudulent predicate act such as when the Development Agreement was materially modified on May 6, 2013, or when each mailing was sent by the Sullivan County Board of Elections as a result of defendants' voter fraud scheme.  To the extent that plaintiffs are arguing that the statute of limitations does not begin to run until defendants' last predicate act, the Supreme Court has rejected a "last predicate act rule" for civil RICO claims.  Klehr v. A.O. Smith Corp., 521 U.S. 179, 187 (1997).  Further, while the Second Circuit has recognized that "in some instances a continuing series of fraudulent transactions undertaken within a

16

common scheme can produce multiple injuries which each have separate limitations periods," that principle only applies where the injury is "new and independent." <u>In re Merrill Lynch Ltd. P'ships Litig.</u>, 154 F.3d 56, 59 (2d Cir. 1998); <u>see also</u> <u>Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.</u>, 420 F. Supp. 2d 253, 266 (S.D.N.Y. 2006) ("The <u>In re: Merrill Lynch</u> decision confirms that, in at least some cases, injuries are not 'new and independent' when they are attributable to a common scheme."). The injuries related to defendants' alleged voter fraud are not new and independent. The Amended Complaint alleges that the voter fraud orchestrated by defendants was part and parcel of one common scheme to promote the completion of Chestnut Ridge without interference.[6] (<u>E.g.</u>, Am. Compl. ¶¶ 22, 32, 36.)

In sum, because it is apparent on the face of the Amended Complaint that plaintiffs had actual or inquiry notice of their alleged RICO injury more than four years before they filed this suit, this action is time-barred.

B.    <u>RICO Enterprise</u>[7]

Plaintiffs' RICO claims are independently subject to dismissal because plaintiffs fail to adequately allege a RICO enterprise. The fatal flaw is plaintiffs'

---

[6] As discussed below, even if the alleged voter fraud created a new and independent injury such that a separate limitations period would apply, such injury is not legally cognizable as a RICO predicate act as it does not involve harm to business or property.

[7] The Court notes that defendants have raised numerous additional grounds for dismissal in support of their motion, most of which (including defendants' argument as to the merits of the action) would warrant serious consideration by this Court. But, given that a proper discussion of each such ground would mandate a voluminous opinion that would require an unnecessary expenditure of judicial resources, and because the three grounds upon which the Court does dismiss the Amended Complaint present the cleanest and clearest bases for dismissal, the Court declines to address a number of other arguments raised in defendants' motion.

failure to explain the "specific details of any hierarchy, organization, or unity among the various alleged conspirators" in any non-conclusory way.  Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc., 165 F. Supp. 2d 514, 549 (S.D.N.Y. 2001); see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004) (affirming dismissal where plaintiffs failed to provide "any solid information regarding the hierarchy, organization, and activities of th[e] alleged association-in-fact enterprise from which [the Court] could fairly conclude that its members functioned as a unit" (quotation marks and citations omitted)).  The Amended Complaint essentially strings together the various defendants and labels them an enterprise.  (See, e.g., Am. Compl. ¶¶ 56-58, 476.)  That is insufficient to state a RICO claim.  First Capital Asset Mgmt., 385 F.3d at 175.

While the Amended Complaint alleges numerous predicate acts that might demonstrate the existence of a pattern of racketeering activity, such allegations are not necessarily sufficient to show an association-in-fact RICO enterprise—the enterprise must have an existence separate and apart from the racketeering scheme itself.  United States v. Cain, 671 F.3d 271, 289 n.7 (2d Cir. 2012) (A RICO enterprise "'is an entity separate and apart from the pattern of activity in which it engages.'" (quoting Turkette, 452 U.S. at 583)).  Plaintiffs' allegations provide no basis for inferring either that the defendants formed an ongoing organization or that defendants formed a coherent entity that was separate and apart from the predicate acts that comprise the alleged fraudulent scheme.  See D. Penguin Bros. Ltd. v. City Nat'l Bank, 587 F. App'x 663, 668 (2d Cir. 2014) (summary order); First

<u>Asset Capital Mgmt.</u>, 385 F.3d at 174.  That basis is lacking, in part, because the Amended Complaint alleges in conclusory fashion that various individuals and entities are alleged to have taken acts to further the scheme despite not having any apparent connection to most (or all) of the defendants—e.g. Susan Berentsen (the Village Clerk) and Bloomingburg Rentals.  (<u>E.g.</u>, Am. Compl. ¶¶ 154, 191, 344, 369.).  Such allegations do not plausibly support existence of a RICO enterprise.[8]

C.   <u>RICO Injury</u>

The Amended Complaint alleges that plaintiffs suffered myriad injuries as a result of defendants' scheme.  All but two allege inchoate or speculative harms, injuries that did not plausibly cause harm to business or property, or injuries that merely restate the cause of action.  (<u>See</u>, <u>e.g.</u>, Am. Compl. ¶¶ 482, 489.)  Among such harms are plaintiffs' allegations that they were induced to rezone and transfer territory from the Town to the Village, that invalid voters have cast and will cast votes in Town and Village elections, that Village officials were corrupted through bribery which deprived citizens of the right to honest services, that plaintiffs' ability to promote future development is inhibited by defendants' control of waste water treatment capacity, and that plaintiffs have been defamed by false claims of anti-Semitism.  (<u>See</u>, <u>e.g.</u>, Am. Compl. ¶¶ 482(a)-(j), 489(a)-(p).)  These injuries are not cognizable under the RICO statute.  <u>See</u> <u>First Nationwide Bank</u>, 27 F.3d at 768

---

[8] The Amended Complaint alleges, in the alternative, that either Raymond Farms or Sullivan Farms constitute an enterprise under RICO.  (Am. Compl. ¶¶ 59, 61.)  These theories of a corporate enterprise fail because plaintiffs do not plausibly allege a nexus between these entities and the alleged racketeering activity.  <u>D. Penguin Bros.</u>, 587 F. App'x at 667; <u>First Capital Asset Mgmt.</u>, 385 F.3d at 174; <u>see also</u> <u>United States v. Thai</u>, 29 F.3d 785, 815 (2d Cir. 1994) (The predicate acts must be "related to the enterprise's activities" or the defendant must have been "enabled to commit the offense solely by virtue of his position in the enterprise.").

(RICO claim does not accrue "until the amount of damages becomes clear and definite"); Town of W. Hartford, 915 F.2d at 104 (Injury to a government entity's "ability to carry out its functions" is insufficient to support a RICO claim); Hecht, 897 F.2d at 23 (RICO requires that plaintiff was "injured in his business or property"); Kimm, 196 F. App'x at 16 (RICO claim may not be premised on "generalized reputational harms").[9]

While not as clearly deficient on their face, plaintiffs' two remaining alleged injuries fail to pass muster.  The Amended Complaint alleges that the Town was deprived of a $1,000 per unit fee that it charges for all new development to fund public parks, and that the Village was induced to accept a 50% reduction for defendants' permit and filing fees.  (E.g., Am. Compl. ¶¶ 482(d), 489(l).)  Such injuries are speculative and at odds with other allegations in the Amended Complaint.  Any harm resulting from the Village's acceptance of only 50% of ordinary building permit fees from Sullivan Farms is speculative because it rests on an unprovable counter-factual scenario (in which defendants would have gone forward with the project despite having to pay full fees) and is too attenuated from defendants' alleged racketeering activity to support a RICO claim.  See Hecht, 897 F.2d at 23-24.  Similarly, even if the Town was deprived of a $1,000 per unit development fee when it transferred jurisdiction over Chestnut Ridge to the Village,

[9] In opposing the instant motions, plaintiffs additionally argue that they suffered injury by having to pay unnecessary legal fees in defense of baseless and fraudulent litigation and the salaries of public officials that were corrupted by defendants.  These injuries cannot support defendants' RICO claims because the Amended Complaint is devoid of any allegations relating to these injuries and, in any event, plaintiffs fail to plausibly show that such injuries were proximately caused by defendants' alleged racketeering activity.  See Hecht, 897 F.2d at 23-24.

any actual harm is speculative and unprovable because there is no allegation that defendants would have gone forward with their development plan absent the transfer of jurisdiction, and such an allegation would nonetheless be implausible in light of the Town's restrictive zoning regulations.[10]   (See Am. Compl. ¶ 68.)

D.   State Law Claims

The substantive civil RICO claims and the related conspiracy claims are the only claims that arise under federal law.  As set forth above, all such claims are subject to dismissal.  A district court "may decline to exercise supplemental jurisdiction over a claim in subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); In re Merrill Lynch, 154 F.3d at 61.  Having dismissed all of plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

E.   Defendant Mark Berentsen

Although defendant Mark Berentsen has not yet appeared in this action and therefore has not moved to dismiss the Amended Complaint, the Court dismisses the action against Berentsen sua sponte for failure to state a claim.  See Thomas v.

---

[10] For the same reasons that plaintiffs' substantive RICO claims fail, the Court also dismisses plaintiffs' RICO conspiracy claims brought under 18 U.S.C. § 1962(d).  See First Capital Asset Mgmt., 385 F.3d at 164 (RICO conspiracy claims are subject to dismissal where "entirely dependent on [properly dismissed] substantive RICO claims."); Continental Finance Co. v. Ledwith, No. 08 CIV. 7272(PAC), 2009 WL 1748875, at *6 (S.D.N.Y. June 22, 2009).

Scully, 943 F.2d 259, 260 (2d Cir. 1991) (A "district court has the power to dismiss a complaint sua sponte for failure to state a claim on which relief can be granted [as long as it] giv[es] the plaintiff an opportunity to be heard.").  Plaintiffs' claims against Berentsen are the same as those asserted against the other defendants and thus suffer from the same defects.  There is nothing in the record to suggest that the claims against Berentsen should survive under these circumstances.

If plaintiffs have a procedural objection to dismissal of the action against Berentsen, they shall file a letter with the Court providing the basis for such objection within seven days of this Opinion & Order.

V.     CONCLUSION

For the reasons set forth above, defendants' motions to dismiss are GRANTED.  Plaintiffs' substantive RICO and RICO conspiracy claims are dismissed with prejudice against all defendants and the Court declines to accept supplemental jurisdiction over the remaining state law claims.

The Clerk of Court is directed to terminate this action.

SO ORDERED.

Dated:      New York, New York
            September 11, 2015


                              _____
                              KATHERINE B. FORREST
                              United States District Judge